UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TRACIE A.[1],

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

CASE NO. 4:21-CV-2-MGG

**OPINION AND ORDER**

Plaintiff Tracie A. seeks judicial review of the Social Security Commissioner's decision denying her late husband, James A., disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act prior to November 24, 2018. This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1) and 42 U.S.C. § 405(g). [*See* DE 10]. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**I.    OVERVIEW OF THE CASE**

Mr. A. filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") on January 3, 2017. Mr. A. alleged that he had been disabled since December 5, 2015, due to a variety of physical and mental ailments for which he had been receiving treatment since at least January 2016. [DE 16 at 29]. Mr. A.'s claims were denied initially on April 21, 2017. [*Id.* at 219–26]. After an initial reconsideration and

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

review by a state agency physician and disability examiner, Mr. A.'s claims were denied again on August 10, 2017. [*Id.* at 231]. Mr. A. timely requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted in Valparaiso, Indiana on October 15, 2018. [*Id.* at 78]. The ALJ denied Mr. A.'s claims on January 10, 2019. [*Id.* at 190]. After taking another appeal to the Social Security Appeals Council, Mr. A.'s case was remanded for further findings regarding Mr. A.'s pulmonary impairments. [*Id.* at 216–17]. The ALJ conducted another hearing by telephone on May 18, 2020. [*Id.* at 56]. After this hearing, the ALJ determined that Mr. A. was disabled as of November 24, 2018, but not before. [*Id.* at 24–36]. Mr. A. again appealed the decision, but it became the final decision of the Commissioner when the Appeals Council denied his request for review on November 3, 2020. [*Id.* at 8–12]. *See* 20 C.F.R. § 404.981, 416.1481[2].

Mr. A. timely filed the instant case requesting review of the Commissioner's decision. [DE 1]. Mr. A. passed away as this litigation was pending. Mr. A.'s attorney moved, and this Court granted, a motion to substitute Mr. A.'s wife, Tracie A, as the plaintiff in this action, pursuant to Fed. R. Civ. P. 25(a). [DE 24]. This matter is fully briefed and is now ripe for review.

## II.   APPLICABLE STANDARDS

### A.   Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined in the Social Security Act ("the Act"). A person is disabled under the Act if "he or she has an

---

[2] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

To determine if a claimant is disabled, the Commissioner conducts a five-step inquiry. 20 C.F.R. § 404.1520. At Step One, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* at (a)(4)(i). At Step Two, the ALJ determines whether the claimant's impairments are severe. *Id.* at (a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. *See* 20 C.F.R. 404.1520(c). At Step Three, the ALJ determines whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404 of the C.F.R. 20 C.F.R. § 404.1520(a)(4)(iii).

At Step Four, the ALJ evaluates the claimant's residual functional capacity ("RFC") and determines whether the claimant can perform past relevant work based on the RFC. *Id.* at (a)(4)(iv). The RFC represents the most that the claimant can do given his limitations. 20 C.F.R. § 404.1545(a). A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms; their intensity, persistence, and limiting effects; and the consistency of these symptoms with the objective medical evidence and other evidence in the record. *Id.* at (a)(1). Finally, at Step Five, the ALJ determines whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may require the testimony of the vocational expert ("VE") to make a Step Five determination. VEs typically use information from

3

the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform different kinds of work. *See* S.S.R. 00-4p, 2000 WL 1898704, *2 (Dec. 4, 2000). The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### B. Standard of Review

This Court has jurisdiction to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled, but whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Indeed, "[w]here substantial evidence supports the ALJ's disability determination, [the reviewing court] must affirm the decision even if reasonable minds could differ as to whether the claimant is disabled." *L.D.R. ex rel. Wagner v. Berryhill*, 920 F.3d 1146, 1152 (2019). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The Supreme Court has clarified that "substantial evidence" is a term of art in administrative law, and that, regardless of its meaning in other contexts, "the threshold for evidentiary sufficiency is not high" in Social Security appeals. *Biesek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). When reviewing an ALJ's decision for substantial

evidence, reviewing courts must be careful not to Indeed, reviewing courts must be careful not to substitute its judgment for the ALJ's by reconsidering facts or reweighing evidence. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *see also Green v. Saul*, 781 Fed. App'x 522, 527–28 (7th Cir. 2019).

While this is a very deferential standard, the ALJ must articulate his analysis so that a reviewing court can identify a "logical bridge" from the evidence to his conclusions, providing at least a glimpse into the reasoning behind his analysis. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Building a logical bridge requires the ALJ to "confront the evidence in [the claimant's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). If the ALJ fails in his responsibility to build a logical bridge between the evidence and his conclusions, the case must be remanded. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

### III. ANALYSIS

#### A. The ALJ's Decision

Mr. A.'s second hearing before an ALJ on his applications for DIB and SSI occurred via telephone on May 18, 2020. On May 28, 2020, the ALJ issued his decision. Despite Mr. A.'s alleged onset date of December 5, 2015, the ALJ found that Mr. A. was disabled as of November 24, 2018, after conducting the requisite five-step analysis for evaluating disability benefits claims. 20 C.F.R. § 404.1520.

Here, the ALJ determined at Step One that Mr. A. had not engaged in substantial gainful activity since the alleged onset date, December 5, 2015. [DE 16 at 26]. At Step

Two, the ALJ determined that Mr. A. suffered from the severe impairments of anemia, COPD, depression, and PTSD as of the alleged onset date. [*Id.* at 26]. Further, the ALJ found that Mr. A. suffered from additional severe impairments as of November 24, 2018, including acute respiratory distress syndrome ("ARDS"), alveolar damages, and inflammatory pulmonary fibrosis. [*Id.*]; *see* 20 C.F.R. § 404.1520. The ALJ also found that Mr. A. suffered from two non-severe impairments, which are impairments that have no more than a minimal effect on the claimant's ability to perform basic work functions. *See* 20 C.F.R. § 404.1522. The ALJ found that Mr. A. suffered from gastroesophageal reflux disease ("GERD") and a hiatal hernia [DE 16 at 27].

At Step Three, the ALJ found that since December 5, 2015, Mr. A. did not have an impairment or combination of impairments that equals the severity of one of the listed impairments. [*Id.*]. In making this determination, the ALJ consulted the listing for chronic respiratory disorders and the paragraphs "B" and "C" criteria for mental impairments. [*Id.*]. In support of these findings, the ALJ found that, while Mr. A.'s Pulmonary Function Test results were very low, the medical record showed that Mr. A. was lethargic when entering the exam room and did not take a deep breath during the testing, making the results unreliable. [*Id.*]. Further, the ALJ found that, despite Mr. A.'s claimed mental limitations, the consultative psychological examiner found that Mr. A. had an intact memory and adequate social skills. [*Id.* at 28].

At Step Four, the ALJ considered Mr. A.'s residual functional capacity ("RFC"). Here, the ALJ found that prior to November 24, 2018, Mr. A. had the RFC to perform sedentary work with the following additional limitations:

> [H]e can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl . . . . The claimant could occasionally work in dust, odors, fumes, and pulmonary irritants; and never in humidity or wetness. The claimant was limited to simple work-related decisions and simple, routine tasks with no assembly line work or strictly enforced daily production quotas. The claimant could never interact with the general public, but could have occasional interaction with coworkers and supervisors. [*Id.* at 28].

The ALJ then found that beginning on November 24, 2018, Mr. A. had the RFC to perform sedentary work with the above-quoted limitations, with the additional limitation that Mr. A. "must use a portable oxygen tank." [*Id.* at 33]. The ALJ found that Mr. A. was unable to perform past relevant work based on his RFC. [*Id.* at 34]. Accordingly, the ALJ moved on to Step Five. Here, the ALJ asked a VE to testify regarding which occupations, if any, Mr. A. could perform. [*Id.* at 35]. The VE identified three jobs in the DOT that Mr. A. could still perform prior to November 24, 2018: ink printer (DOT # 652.685-038), hand mounter (DOT # 976.684-018), and dial marker (DOT # 729.684-018). [*Id.*]. According to the VE, however, there were no jobs in the national economy that Mr. A. could perform as of November 24, 2018, given the additional limitations. [*Id.*]. Thus, the ALJ determined that Mr. A. was not disabled prior to November 24, 2018, but was disabled as of that date and continued to be disabled through the date of the ALJ's decision. [*Id.* at 36].

    **B.**    **Issues for Review**

Mr. A. challenges the ALJ's decision that he was not disabled from December 15, 2015, through November 24, 2018, arguing that the ALJ's RFC and vocational findings

7

are founded upon legal error and are not supported by substantial evidence. Mr. A. more specifically contends that the ALJ committed legal error in evaluating the opinion evidence of his doctors. [DE 23 at 5].

Based on this Court's review of the decision below and the accompanying administrative record, the Court finds that the ALJ committed no legal error and his findings are supported by substantial evidence appearing in the record. Thus, the Court will affirm the ruling of the Commissioner.

### C. Discussion

#### i. The ALJ's decision is not founded upon legal error.

Mr. A. first argues that the ALJ's RFC and vocational findings are founded upon legal error because the ALJ applied an incorrect or higher standard of proof when evaluating evidence of Mr. A.'s impairments. [*Id.* at 6–7]. In support, Mr. A. contends the ALJ's written opinion did not "clearly identify the preponderance standard" and explain why the evidence was insufficient to meet that standard, instead applying "no discernable evidentiary threshold (or an erroneous one)." [*Id.* at 6]. ALJs are bound to make their disability determinations based on a "preponderance of the evidence." 20 C.F.R. § 404.929; *Jones ex. rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996). This standard requires the ALJ to "consider[] the evidence" and support his conclusions by setting forth "specific reasons" for his decision. *See Gedatus v. Saul*, 994 F.3d 893, 899–900 (7th Cir. 2021).

The ALJ's opinion shows he did not apply a higher standard of proof and gave "specific reasons" for his decisions when weighing the reliability and persuasiveness of

the evidence and thus fulfilled his burden. *See id.* For example, the ALJ gave little weight to the testimony of Mr. A.'s wife regarding his ability to manage his daily needs because it was inconsistent with Mr. A.'s own testimony and representations and with other medical evidence in the record, which he cited. [DE 16 at 32]. The ALJ likewise gives greater weight to Mr. A.'s description of his symptoms as of November 24, 2018, because his statements are consistent with the relevant medical evidence of his impairments. [*Id.* at 34]. Finally, when discussing the medical opinions of State agency consultants, the ALJ supports his decision to grant those opinions little weight by citing to various medical evidence contradicting the consultants' conclusions. [*Id.*] While Mr. A. may have preferred the ALJ weigh the evidence differently, it is not this Court's place to "reweigh the evidence, resolve debatable evidentiary conflicts . . . or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus*, 994 F.3d at 900.

Further, Mr. A.'s claim that the ALJ's use of boilerplate language like "not fully supported" shows the ALJ committed legal error is without merit. The use of boilerplate language is not reversible error unless the ALJ "did not give sufficient reasons, grounded in evidence in the record, to support her ultimate determination." *Murphy v. Colvin*, 759 F.3d 811, 816 (2014) (internal citation omitted). As discussed above, the ALJ gave reasons for his decisions regarding the weight given to different evidence and supported those decisions with citations to the record. Thus, despite the ALJ's use of boilerplate language, he properly applied the standard of proof and grounded his conclusions with evidence in the record, which is not legally erroneous.

9

### ii.     The ALJ's opinion is supported by substantial evidence.

Mr. A. advances numerous arguments attacking the ALJ's opinion, and the RFC specifically, as not supported by substantial evidence.

*First*, Mr. A. argues that the ALJ simultaneously credited and dismissed expert evidence regarding Mr. A.'s impairments to support his conclusion regarding Mr. A.'s onset date without giving reasons for doing so. [DE 23 at 9]. In support, Mr. A. cites to the ALJ's differential treatment of the evidence submitted by Dr. May Lee, Mr. A.'s first pulmonologist; Jean Swenton, a nurse practitioner who treated Mr. A.; and Dr. Scott Roberts, another pulmonologist who treated Mr. A. as his impairments worsened. [*Id.*]. Mr. A. contends these errors amount to "improperly playing doctor" and that the ALJ's decision is not supported by substantial evidence as a result. [*Id.* at 22, 20–24].

ALJs are required to give controlling weight to a treating physician's opinion if the opinion is "well supported and there is no contradictory evidence."[3] *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). When evaluating the opinions of treating physicians, ALJs must be careful to avoid "play[ing] doctor," which occurs when an ALJ reaches "his own independent medical conclusion" that is either based on evidence not in the record or the product of unwarranted inferences from the record. *Myles v. Astrue*, 582 F.3d 672, 677–78 (7th Cir. 2009).

Here, the ALJ's opinion and evidence in the record show that the ALJ properly weighed the evidence and did not "play doctor." Regarding the evidence submitted by

---

[3] The Court recognizes this rule does not apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Mr. A. filed his claim for DIB on January 5, 2017, and for SSI on January 7, 2017. [DE 16 at 480–84; 485–92]. Thus, the Court will analyze Mr. A.'s claims under the old rule. *See* 20 C.F.R. § 404.1527.

Dr. Lee, the ALJ was not required to give her opinion controlling weight, as there is ample contradictory evidence in the record, including from other providers who treated Mr. A., which the ALJ cited to support his conclusion that Dr. Lee's opinion was entitled to lesser weight. [DE 16, at 32]. The same is true for the opinion of Dr. Roberts, who the ALJ notes did not actually treat Mr. A. until after the established onset date, and whose opinion points to evidence that other parts of the record show is unreliable. [*Id.*]. In reaching his conclusion, the ALJ cites to Dr. Roberts' opinion, treatment notes, and the test results upon which he relied. [*Id.*]. Finally, while the ALJ did not explicitly incorporate Ms. Swenton's usage of narcotics to treat Mr. A.'s pain into his conclusions, ALJ opinions are summaries of treatment, and all summaries must be partial and selective. *Gedatus*, 994 F.3d at 901. Further, the ALJ clearly considered such evidence because he cites it in the opinion. [DE 16 at 31 (discussing Mr. A.'s Xanax prescription)]. While Mr. A. may have preferred that the ALJ weigh that evidence differently, this Court cannot substitute its judgment for the ALJ's by reweighing evidence. *Cannon*, 213 F.3d at 974; *see also Green* 781 Fed. App'x at 527–28.

*Second*, Mr. A. argues that the ALJ erred in treating records showing Mr. A.'s various conditions as "stable" as showing him capable of work. [DE 16 at 16]. Mr. A. directs the Court's attention to the ALJ's repeated descriptions of Mr. A.'s conditions as "'stable' or improved with medication." [DE 23 at 16]. Mr. A. goes on to argue that the ALJ's reliance on evidence assessing Mr. A.'s condition as stable or responsive to medication amounts to equating stability of symptoms with ability to work. [*Id.*].

11

However, the ALJ did not rely solely on this evidence to conclude that Mr. A. was not disabled prior to the established onset date of November 24, 2018. The ALJ cited to Mr. A.'s own testimony regarding his ability to perform chores, [DE 16 at 32], and to many instances where Mr. A.'s symptoms improved or stabilized when on medication. [*Id.* at 31]. Additionally, the ALJ cited to evidence showing that Mr. A. had "clear lungs" and only "mild respiratory distress." [*Id.* at 32]. As for Mr. A.'s mental impairments, the ALJ found that, despite Mr. A.'s stated difficulties interacting with people and focusing on tasks, [*Id.* at 31], Mr. A.'s doctors consistently found that his depression was stable on medication and that Mr. A. had intact memory and concentration. [*Id.*]. The ALJ then determined whether Mr. A. was able to work given his physical and mental limitations. Despite opinion evidence from State consultants that Mr. A. could perform light work with some restrictions, the ALJ gave little weight to those opinions and instead found that Mr. A. was "limited to sedentary work" with "postural and hazard limitations" and "environmental restrictions" due to his physical impairments. [*Id.* at 31–32]. Further, the ALJ determined that, given Mr. A.'s mental limitations, he could only perform "simple tasks" without "strictly enforced daily production quotas" and where Mr. A. had only "brief, superficial interactions with others," which the ALJ supported with citations to the evaluations of state psychological consultants. [*Id.* at 32]. Thus, the ALJ's determination of Mr. A.'s physical and mental impairments and their effects on his ability to work was not based on "unfounded insinuation" but on substantial evidence. [DE 23 at 16].

*Third,* Mr. A. argues that the ALJ's RFC fails to address all the relevant functional limitations resulting from or implied by his mental impairments because he "minimized, ignored, or omitted evidence." [*Id.* at 17]. More specifically, Mr. A. contends that the actual text of the ALJ's RFC decision "reflects little more than the general description of unskilled work found in the POMS." [*Id.*]. However, the ALJ's opinion thoroughly catalogs Mr. A.'s history of treatment for his mental health and the opinion evidence submitted in support of Mr. A.'s alleged mental limitations. The ALJ carefully recites the history of Mr. A.'s mental health treatment, including his history of therapy for PTSD, [DE 16 at 30], his prescriptions for Zoloft and Xanax for depression, [*id.*], and the results of tests and other medical opinions showing Mr. A. had "intact memory and concentration." [*Id.* at 31]. The ALJ included limitations in the RFC to account for Mr. A.'s mental impairments, including limiting Mr. A. to "simple work-related decisions and simple, routine tasks," as well as limits on interactions "with the general public" and "with coworkers and supervisors." [*Id.* at 28].

*Fourth*, Mr. A. claims that the ALJ failed to address in the RFC all the relevant mental functions required for unskilled work that were implicated by the evidence in this case. [DE 23 at 17]. Mr. A. points to the ALJ's RFC to support this claim, alleging that it "reflects little more than the general description of unskilled work." [*Id.*]. A listing of the relevant functions is contained in Social Security's Program Operations Manual System ("POMS") DI 25020.010, which describes the mental skills needed for each kind of work. Further guidance on limitations consistent with sedentary work, which the ALJ found here, are contained in Social Security Ruling ("SSR") 96-9P. S.S.R.

13

96-9P, 1996 WL 374185 (Jul. 2, 1996). While "generically confining claimants" with general restrictions in an RFC may not always adequately capture a claimant's limitations, so long as the ALJ "tied the record evidence to the limitations included in the RFC" and tailored those limitations based on the claimant's symptoms, courts will uphold the RFC as "adequately account[ing] for the claimant's demonstrated" mental impairments. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

Here, the ALJ addressed all those functions implicated by the evidence and supported his conclusions with citations to that evidence. The ALJ found that Mr. A. could accept and handle simple instructions. [DE 15 at 32]; POMS DI 25020.010(B)(2)(a), (B)(2)(c); S.S.R. 96-9P, 1996 WL at *8. The ALJ found that Mr. A. could only sustain limited interaction with coworkers given his "adequate" but limited social skills. [DE 16 at 28, 32]; POMS DI 25020.010(B)(3)(g), (l); S.S.R. 96-9P, 1996 WL at *9. The ALJ found that Mr. A. had the ability to adapt and manage change. [DE 16 at 28]; POMS DI 25020.010(B)(3)(m); S.S.R. 96-9P, 1996 WL at *9. Finally, the ALJ found that Mr. A. had the ability to "concentrat[e], persist[], or maintain pace" at work. [DE 16 at 28]; POMS DI 25020.010(B)(3)(d)–(f); S.S.R. 96-9P, 1996 WL at *9. Thus, the RFC adequately accounts for Mr. A.'s demonstrated limitations. *See Jozefyk*, 923 F.3d at 498.

*Finally*, Mr. A. argues that the ALJ impermissibly strayed from the requirements of Social Security Ruling 16-3p for addressing a claimant's subjective symptoms when fashioning the RFC. Mr. A. alleges that the ALJ dismissed Mr. A.'s description of his symptoms and cherry-picked evidence to support his conclusion. [DE 23 at 13–14]. Specifically, Mr. A. directs the Court's attention to the ALJ's treatment of Mr. A.'s

14

statements regarding the activities of daily life and his symptoms. [*Id.* at 13]. Mr. A. asserts that, "to the extent the ALJ was implying" that Mr. A.'s "statements about his daily life were unreliable, SSR 16-3p prohibits ALJs from simply deciding claimants are lying." [*Id.* at 14].

Social Security Ruling 16-3p guides an ALJ's evaluation of the intensity and persistence of a claimant's symptoms. S.S.R. 16-3p, 2017 WL 5180304 (Oct. 25, 2017). ALJs are instructed to "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms" and "evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.* at *6. When evaluating the evidence, an ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Instead, the ALJ "has the obligation to consider all relevant medical evidence" when evaluating a claim, though the ALJ "need not mention every piece of evidence" so long as he builds the requisite logical bridge between evidence and conclusion. *Id.*

Here, the ALJ properly considered Mr. A.'s statements regarding his symptoms. For example, when evaluating Mr. A.'s statements regarding his mental health, the ALJ compared Mr. A.'s statements to the reports of his own psychologists and the state consultative psychological examiner, finding that Mr. A.'s statements were not consistent with the records of his doctors. [DE 16 at 28]. The ALJ also credited much of Mr. A.'s statements regarding his physical symptoms, including discounting the State consultants' evaluation of Mr. A.'s ability to work because it did not account for Mr.

A.'s respiratory problems and resultant fatigue. [*Id.* at 31]. This is consistent with the guidance in SSR 16-3p, which expects the ALJ to evaluate a claimant's statements in light of the medical and other evidence. SSR 16-3p, 2017 WL at *6.

Further, the ALJ did not engage in cherry-picking when evaluating the evidence. In fact, the ALJ's order cites much of the same evidence that Mr. A. claims the ALJ ignored or minimized. The ALJ considered evidence submitted by Mr. A. in his various Function Reports, [DE 16 at 28], and the testimony of Mr. A.'s wife, [*Id.* at 32]. The ALJ considered evidence submitted by Mr. A.'s doctors and caretakers, including Ms. Swenton, [*Id.* at 27, 29–31]; Dr. Lee, [*Id.* at 29–30, 32–33]; Dr. Roberts, [*Id.*]; and Dr. O'Danovich, Mr. A.'s psychologist, [*Id.* at 30–31]. The ALJ also considered the reports of the State agency medical consultants, [*Id.* at 30], and psychological consultants, [*Id.* at 32]. While Mr. A. may object to the ALJ's weighing of the evidence, the ALJ considered the evidence to which Mr. A. points and cites to that evidence in support of his conclusions. It is not for this Court to disturb the adequately supported conclusions of the ALJ. *Cannon*, 213 F.3d at 974. Thus, the ALJ's RFC is supported by substantial evidence.

Having found that the ALJ supported his RFC determination with substantial evidence, the Court need not discuss Mr. A.'s remaining argument that the ALJ failed to adequately question the VE regarding Mr. A.'s limitations. Mr. A. argues that the VE was not presented with the limitations Mr. A. wants added to his RFC. Yet, the ALJ questioned the VE using the exact language of the RFC that has been shown above to be supported by substantial evidence. Mr. A. even acknowledged that fact in his opening

brief. [DE 23 at 8]. Therefore, no further questioning of the VE is required to ensure the VE's testimony is consistent with the applicable RFC. Thus, the ALJ's order is supported by substantial evidence and should be affirmed.

### IV. CONCLUSION

For the reasons stated above, the ALJ properly applied the relevant legal standards in his decision denying Mr. A. disability benefits between December 1, 2015, and November 24, 2018. Moreover, the ALJ's decision is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

**SO ORDERED** this 13th day of March 2023.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge